The first case for argument this morning is 13-5055, Cunningham v. United States. Mr. Bowling. Thank you, Your Honor. May it please the Court. In dismissing Mr. Cunningham's breach of contract case below, the trial court erred in concluding that Mr. Cunningham's prior petition for enforcement action at the MSPB had raised judicata effect on his Tucker Act claim in the court. And the key error, as we've discussed in the briefs, was that the court failed to recognize that the MSPB is not a court of competent jurisdiction over the same claim that is properly before the court of jurisdiction. If this prevailed today and you're in front of the Court of Federal Claims, are you going to make an argument and the threshold issue before the Court of Federal Claims would be whether or not there was a breach of the settlement. Would you be arguing that that issue has already been decided by the MSPB so that the Court of Federal Claims should not review that issue anew under kind of an issue preclusion theory, or is it your view that they get to do the whole thing over again? It's our view that issue preclusion would be something that could be argued in the Court of Federal Claims because issue preclusion is different from claim preclusion. And the – although let me preface first by saying that that issue has not come – I know I understand the question is hypothetical, but the government has not yet taken a position that's inconsistent with the MSPB. The government has never answered the complaint yet. So if the government was to answer the complaint and deny facts or factual findings that the issue would be the government stopped from denying those facts. Well, did the government have an opportunity to appeal the case before the MSPB? I mean, they got an adverse ruling and you won and then you withdrew it. So that, I mean, in theory, if you haven't withdrawn it, they may have had the opportunity to appeal it. Would that affect the issue of – the issue of preclusion? That may. In fact, it may in terms of the finality of that decision with respect to the government. But I think that's an issue that would have to be decided later. It's not something that the Federal Circuit would need to decide. So let's assume – I'm sorry. Let's assume the MSPB had gone the other way, had gone against your client. Would you be here now or would you assume that no, there would be issue preclusion on the issue of whether or not there was a breach of settlement agreement so it's pointless to go to the CFC? That would be our position. I mean, if Mr. Cunningham had lost, and our view is – and again, this is not the official position. We haven't taken that yet. But our view would be – my view is issue preclusion would bar that. And the reason is – and I know this is sort of a – this is a subtle difference, but I think it's really important here. Issue preclusion and claim preclusion do require the prior form to have competent jurisdiction, but competent jurisdiction over what is the important question. And I think looking at the trial court's decision here on 825 and 826, there was a paragraph that essentially addressed this issue. It was a – there were only a few sentences on this issue of competency jurisdiction. And the trial court asked the question, did the MSPB – was the MSPB a board of competent jurisdiction over the petition for enforcement? And the answer to that is yes, and we've never disputed that. But that's not the right question when it comes to claim preclusion because claim preclusion asks, would the MSPB be a board of competent jurisdiction over a contract claim, not a petition for enforcement of a settlement agreement. But in contrast, issue preclusion – Right. Just so I can clarify something, in response to Judge Prost's question, why wouldn't you be arguing for issue preclusion on the breach of settlement fact-finding in the Court of Federal Claims based on what the MSPB did, you know, assuming you even get there? I think we would. I mean, that's – Because it wasn't clear in your briefs. Your briefs seemed to kind of skate around it. We're not – we're not taking a position because we just don't think that issue is before the Federal Circuit on this appeal because it's not right. I mean, the government has – I don't know whether the government at the trial court level will take a position, will even – whether collateral stop will be raised or whether we would pursue that. But certainly, I mean, that's a position, I mean, for all intents and purposes, that we would agree. I mean, we would – Yeah, I mean, I guess maybe another question is why wouldn't you? Why wouldn't you? No, no, I agree with that, and you're right. I don't think there probably is a good answer to that. We would. All right. Could – in your view, the way you're reviewing this statutory scheme that we've got here, could Mr. Cunningham have gone first or only to the CFC and avoided MSPB review entirely? Or did he – is it your view that he did what he had to do, which is go to the MSPB first? No, I do not think that he had to choose the MSPB first, and he certainly could have gone to the Court of Federal Claims under the Tucker Act and pursued the breach of contract claim there. The MSPB, you know, ultimately – and I think it's clear from the record that what he was pursuing in the MSPB was not really capable of providing the remedy that would address the type of breach that was alleged in the complaint here. So what if the settlement agreement had said – had a final clause that said that any violation of any of the terms by either party will constitute an abrogation of this agreement? Then you couldn't go to the CFC, right? Then you would be limited to that remedy, which would be a go-back to, you know, him challenging the initial action if he could, right? And I apologize, I'm not quite sure I understand the question. Are you saying if the settlement agreement said that if either party breaches this agreement, then the agreement is null and void? I mean, the remedy is sort of the relief or the consequences of a breach by either party, the finding of a breach by either party, is that the agreement is abrogated. In that case, then I think that raises the question, which this Court's decision in that you do – with a settlement agreement, you do still have to look at it to see if it's money mandating. So not every contract, every settlement agreement is necessarily money mandating. And if there were provisions of the agreement that indicated that there would not be a remedy, that a breach would mean the contract is void, then I think that would foreclose money as a remedy. Mr. Cunningham. I'm sorry. I guess – okay. My question is, if Mr. Cunningham had gone to the Court of Federal Claims first and, you know, proved that there was a breach of the settlement agreement and then was awarded money damages, at that point, would he be whole? Would there be any need for Mr. Cunningham to go back to the MSPB and get something else from the MSPB? Probably not. And frankly, if he was made whole at the Court, I think he probably would have long passed his chance to go back to the MSPB anyway to file a petition for enforcement. But based on the breach and the remedy that he would seek, the money damages, that would make him whole. And I qualify that only because there may be an issue of the agency's continuing breach. And although the Court is authorized to award equitable relief, it's incidental to their damages remedy. Presumably the Court would make sure that OPM is now back in compliance with the agreement and is continuing to maintain the confidence. Well, we're a little past that point, aren't we, since all of this is a matter of public record now? I mean, how do you put that back into the – Well, I suppose you could still require enforcement of the agreement to ensure that the government wouldn't release any more information or answer any more questions from future employers. Yeah, that $50,000 doesn't buy the government the right to go out and buy a billboard. Right. And although, yeah, you're correct, this isn't public record, but there is still a process that when Mr. Cunningham pursues future employment that there's a strict process that the employers are supposed to follow or that OPM is supposed to follow in terms of providing these references. Did he agree to voluntarily make the settlement agreement part of the record for enforcement purposes, or is that just a standard term that's imposed on all settlement agreements now? He agreed to do that. I don't know whether it's necessarily standard. It's probably typical, but he wasn't required to do that. He agreed to, but as we've argued, including a provision that says we will submit the settlement agreement to the MSPB for enforcement purposes and then the board takes the terms of the agreement and incorporates that into the record along with their dismissal order, that's merely preserving the MSPB, the imposition for enforcement action as a remedy if that makes sense or if that's what he wants to pursue. It's not exclusive. He doesn't have to choose one or the other. The Tucker Act still provides a remedy for breach of contract damages, and we believe that the case law supports this decision. I mean, certainly the Holmes decision establishes the idea that a settlement agreement is a contract, and although that was the EEOC Title VII, we don't think that the difference is material, and the trial court in the judge's discussion on jurisdiction, we believe, correctly analyzed that issue and recognized that the MSPB Civil Service Reform Act scheme mirrors that of Title VII, and just like with Title VII, there's nothing in the statute that precludes a breach of contract suit for money under the Tucker Act. Vandisanda, which I would almost argue is an even more critical decision, which was an extension of Holmes, would address the question of Holmes-like damages. But if you had gone to the MSPB, if you had not withdrawn your appeal to the MSPB and you had gotten the relief of specific enforcement or of rescission, then would you think then you can still go to the CFC to pursue additional damages? Of course. If there was specific performance, I mean, if the MSPB ordered OPM to stop publishing this information or take action to get back into compliance, that does not foreclose a money remedy in the court of oath claims. The issue of rescission is a bit trickier, and looking at the authority of the board, in fact, what they did in this case, the board does not have authority to rescind the agreement. They can cancel their dismissal order if the party elects to rescind, and that's still Mr. Cunningham's choice, and he was presented with that choice, and on the basis of that rescission... Okay, but let's assume he had elected to rescind. Would he still have the opportunity to go to the CFC for the money damages? No. In that case, the contract is void as an issue. And the damages he's seeking at the CFC that has to do with money he would have earned in this new job if he had gotten this new job? Right. He was... Or he had it? He was hired, and he was hired, and there's a secret of the contingency that his private sector employer... It was contingent upon the successful performance of the background investigation, and it was part of that background investigation process where OPM was reached, and then several individuals, as alleged in the complaint, that OPM then disclosed negative information about Mr. Cunningham's federal employment, which raised a red flag and it resulted in a negative finding on the clearance, and so he was, to his private sector employer, fired on that basis. I mean, as alleged, it was the direct violation of this settlement agreement, of this contract, that caused Mr. Cunningham to lose his private sector job. And so how does that work? I'm a former labor lawyer, but I've been out of that business for a long time. I mean, typically, if there's a discharge that you find unlawful, you're dealing with the same employer. So the remedy, you cut off back pay because you say, and you should rehire the guy. Here, the government has no control over this employer, so in theory, what, the back pay could... The pay could last in perpetuity, but he'd have an obligation to continue to look for jobs, et cetera? Yeah, I mean, certainly the doctrine of mitigation would be present, but damages would be measured by, and again, just thinking through what this would be, but the damages would be measured by the differences between private sector salaries and benefits, and what he would have been making had he not been fired as a federal employee. I mean, that one, as one example, would be a basis for a remedy that the MSPB could not provide. The MSPB can't award that federal back pay, plus what you would have made up in the private sector. You were asked about specific performance, but I'm really curious what the government's position is going to be about whether OPM could be ordered to, for example, contact the employer and say, we were wrong. There's nothing negative in this file, and whether they'd do that, since they take the position that they had to provide the notice. So you're saying whether OPM could call the employer again and essentially say, we're sorry, or sort of try to undo that? Yeah, and they say they were obligated to do it, so could the court order specific performance? Because that seems to me what specific performance would be. Would the MSPB order that? Yeah, and I don't think they could get it. I don't think it would be effective. I mean, I think the problem is that the private sector employer, once that information's there, and whatever the reason for the decision, whether he passed the required threshold for getting that clearance to be able to perform work under that contract, it's too late. It's out of the bag. And again, that's really why the position for enforcement action is not an effective remedy at all. The MSPB, the board, recognized that. We're not talking about a failure of the agency to reassign someone to a different position. Where specific performance, telling the agency to do that would be a very easy remedy. In fact, that's where this whole administrative enforcement action makes sense. I mean, it's an easy way for an individual to get that specific performance without going through the full litigation in federal court. But here, that remedy, and frankly, he was left with, he was in a position where, he was basically, the MSPB left him in a position where you have to give that money back, $50,000 back that was two and a half years old, which was paid to you because you've lost your job by the federal government as a result of discrimination, which he doesn't have and can't do that. And so here's a non-breaching party put in a situation where he's the one who has to come up with the money and then reopen his case and gamble that he might win. He wasn't even guaranteed that he would win the underlying action if he reinstated it, which means that theoretically the government could breach the agreement, force Mr. Cunningham to have to reopen his case, and he would never get a remedy. In our view, the position for enforcement action provides some remedies in some cases. In this case, it was not the remedy that Mr. Cunningham, but only the tuck rack could provide. You didn't cite restatement second on judgment section 26, although the red brief did. Are you relying on that theory? The, and correct me, and I apologize, is this an issue on collateral escapades? Right. It's on res judicata. It's an exception to res judicata. When the first court or tribunal where litigation takes place is not competent to provide full relief, and then this exception, section 26, says under those circumstances there would be no bar to a second action in the second tribunal that does have competent jurisdiction to give the other half of the relief. Are you familiar with that? I am, although I don't have the, I apologize for not having the reference directly in front of me, but that principle is certainly what we're relying upon. I mean, that's, and I think that concept is in the Gurley v. Hunt Eighth Circuit case that we cited, and I think it's in the restatement and it's in, you know, a number of cases, but the idea is that competency of the prior forum is a critical piece of the res judicata, to bar a claim. You know, it's been stated in the context that, you know, would that party have been able to litigate that claim, but has failed to do that. Well, no, he could not have, even if he asked for money, that was mistaken. I mean, he asked for money at the MSPB, but they weren't competent to provide it. Okay. Did you have one final thought? Well, although my time's over, so I want to, if I could yield, or did you want to ask a question before? Yes, no, no. You're exhausted your rebuttal time, but we'll restore two minutes for rebuttal. Okay, thank you. Ms. Toplin. May it please the Court. The government respectfully requests that this Court affirm the decision of the trial court. Ms. Toplin, let's start with competency. If the OPM was ordered by MSPB to fix what it had done, to contact the employer and say, we were wrong, we erroneously provided that information, and it's incorrect, would they do it? I don't know that, Your Honor, but I don't think that's within the competence of the MSPB. The MSPB is given jurisdiction to So it can't order specific performance. It can't order specific performance, but specific performance, I'm not quite sure that that would fall within the definition of specific performance. I mean, certainly OPM could voluntarily agree to come back and acknowledge its mistake, and I cannot speak for the agency as to what they would do, because that issue is not before the Court and not before the agency. Well, you raised it. You argued in your brief that they had to provide that information as a matter of law. I'm not following where exactly that was argued, Your Honor, but yes, OPM had to provide correct information under the settlement agreement, and they certainly, the MSPB found that they did not do that. Not under the settlement agreement. You argued that they were required when there's a background investigation to provide that information. If Your Honor says that I'll find it. Well, what I recall was that certainly before the administrative judge, OPM's administrative judge, in her opinion, his opinion, noted that the defense was that we were obligated, we had some statutory, regulatory obligation to provide it, but the judge then called out the fact that they never gave me any specifics, so I don't know what they're talking about. Forget that argument. That was, I apologize, Your Honor, that was OPM's argument before the MSPB, not the argument that we made here. And, you know, to the extent that OPM made those arguments before the MSPB, their statutory, regulatory duty, they're not actually before the court right now. I mean, the court ultimately found that OPM did not comply with the settlement agreement. So what is your view, what is the government's view of what specific performance would, what the authority of the MSPB is in this context to order specific performance? There really is no, unfortunately, because the cat is out of the bag, no actual MSPB-recognized specific performance remedy that can be given that would be effective, because the cat is already out of the bag. And as Your Honor's alluded to, even if the OPM were to take it back, there's no, the government doesn't control the second agency. They don't, they can't force Mr. Cunningham back into his employment. They can't force the agency, this other group, to hire him. So the government would, you know, there really is no specific performance remedy that the MSPB could have given, and the MSPB recognized that, and that's why they offered to rescind and reinstate Mr. Cunningham's, rescind the settlement agreement and reinstate Mr. Cunningham's appeal, which is the agreement that he bargained for. So if he can't pay back that $50,000, can OPM buy a billboard? Can they go out and post this stuff and say, hey, go ahead, take your best shot, pal, since you can't afford to pay the money back, you have no remedy. We can do anything we want to breach our agreement. I wouldn't say that OPM could do that. I mean, they certainly wouldn't do that, Your Honor. But they did do that. They indirectly breached the agreement. You don't have any argument that they didn't. That issue is not before the court. Certainly it was found by the MSPB that they did breach the agreement and were not taking it to the judge. Well, it is before the court. Judge Wallach's question is, is there any enforcement mechanism for when the government breaches one of these settlement agreements? Can they just keep breaching? No, they can't. The government cannot keep breaching. I mean, Mr. Cunningham has a remedy, which is to rescind and reinstate. That's it? That's it? That specific performance, but in this case, I'm not saying that they couldn't. In this case, specific performance wouldn't be effective because the cat is already out of the bag. I mean, certainly the government can't do it again. And what's stopping that? I mean, I think that the action in and of itself is a deterrent, is to not have to go through this litigation again. I mean, I think OPM is well aware of its mistake and intends to not take that sort of action again. I mean, I cannot speak per se for the agency, but OPM isn't intending to harm Mr. Cunningham. There's no ill will here. Yeah, but typically in our judicial system, there are consequences and legal consequences for what is found to be a violation, and that's what I think we're grappling for. Particularly, I know you referred to the reinstatement that Judge Chen was citing in a footnote, and you tried to distinguish it, but I'm having trouble with distinguishing it. I mean, the reinstatement exception is quite clear with regard to relief. Why is this not the exact case in which the relief would not be? You agree that he would get relief at the CFC that is absolutely not available before the MSPB. He did get relief at the CFC. He got the specific relief he bargained for in reaching this agreement. I'm talking about the reinstatement, though. The reinstatement applies to these circumstances, right? We're not somehow outside of the realm of the applicability of the reinstatement. We're not saying you're out. The reinstatement certainly has effects. The reinstatement, to the extent that it alludes to that, is designed to accomplish situations where an individual brings an action in state court and then tries to come back and then bring it in federal court. It is designed for those limits on the remedies, limits in the jurisdiction of the first forum. But the issue with the restatement and with the whole jurisdictional argument, the whole res judicata argument, is you are allowed to split your claim if you're pursuing two distinct forms of relief. What Mr. Cunningham is pursuing is relief for the same exact breach. He already received that relief from the MSPB and he chose not to accept it. He was offered that relief. He knew when he entered that settlement agreement... So is it your view if he had just gone to the CFC without first going to the MSPB, that would be okay? Or is it your view that he was required to go back to the MSPB and therefore that was the beginning of the end of his relief? Based on the bargain that Mr. Cunningham struck, he was required to go to the MSPB and he specifically bargained for that. We're not saying, certainly an argument can be made that the CSRA preempts all settlement agreements, but we're not saying that here. We're saying that Mr. Cunningham struck a bargain. He chose to enter that agreement into the MSPB for enforcement purposes. He specifically chose to elect an MSPB remedy. He did that on the advice of counsel, knowing what those MSPB remedies were. And part of the bargain was that the government would act in good faith. Agreed, but... And the government breached that bargain and Mr. Cunningham was awarded the remedy that he bargained for, the remedy to which he was entitled, which is... Are you arguing jurisdiction right now? I can't tell. Yes, Your Honor, there is no... In response to the judge's first question, there is no jurisdiction to come to the Court of Federal Claims. That is, our position is that the judgment should be affirmed because there is no jurisdiction to bring a claim for breach of an MSPB consent decree to the Court of Federal Claims. That was rejected by the CFC. The argument you're talking about... I mean, the CFC rejected that argument. Yes, Your Honor, it did, but we're pressing that argument now, as is evident in our brief. If the MSPB retains jurisdiction for enforcement, that jurisdiction is exclusive. And that's because of the nature of the CSRA. It is a comprehensive statutory scheme that preempts the more general Tucker Act remedies for breach. Where did Cunningham... Is it somehow more comprehensive than Title VII? I mean, we've kind of already gone down this path and... It's certainly a distinct scheme. And Holmes. It's certainly a distinct scheme from Title VII. I know, but we've already said what we said in Holmes. About what? About Title VII. About how, yes, Holmes could bring that claim for breach of the settlement agreement in the Court of Federal Claims. Now, why is this something different? It is. Just because it's a breach of a settlement agreement coming out of the MSPB. Because the CSRA... What's the meaningful difference? There's several meaningful differences between the CSRA and Title VII, Your Honor. And the Supreme Court actually recognized these differences in Fausto. I mean, the CSRA is a... The structure of the CSRA was designed to create a unitary and consistent executive branch position. That comes directly from the Supreme Court in Fausto. And that was intended to do that by channeling review to the MSPB with appellate review in this court. That's certainly not the same as Title VII. Title VII, I mean, yes, you have the EEOC, but those cases go to district courts across the country. They get appealed to regional circuits across the country. Title VII was intended to create a unitary executive position by vesting jurisdiction over these actions in one unique trial court, trial-level court, or lower forum administrative body acting in a judicial capacity and with appellate review in this court. Additionally, Title VII is a universal scheme. The CSRA only applies to government employees. It's a different bargain. It comes with distinct rights and certainly much more protection for employees and also distinct remedies. That's a bargain that we as federal employees agree to when we enter federal service. We, meaning the government, knows that it exists. The government acknowledges it as a party. When they hire the employee, the employee acknowledges it when they accept federal service. Additionally, the MSPB, unlike the EEOC, in the Title VII context, actually does have direct enforcement authority. The MSPB can affirmatively order an agency to comply to take specific actions, where in the context of the EEOC, you're always forced to come to district court. Always forced. The EEOC does not have that direct regulatory authority. Let me ask you a different question. The two parties briefing on what's the right standard for res judicata, is there a disagreement there or do you both agree with each other? For example, your opposing counsel talked about whether the judgment in the prior action was rendered by a court of competent jurisdiction as a factor in trying to evaluate whether a second claim ought to be barred. Do you disagree with that? No, Your Honor. We just have alleged that the MSPB is a court of competent jurisdiction to adjudicate this claim and they actually reached a final judgment on the merits. You spend a lot of time in your brief talking about the validity of consent decrees. Where did Cunningham enter into a consent decree? What I see is styled a settlement agreement, not a consent decree. Paragraph 11 of that settlement agreement says that this agreement will be entered into the board's record for purposes of enforcement. But he doesn't specifically agree to a consent decree. But that agreement was entered into the record for the purposes of court enforcement. The board entered that into the record and by doing so it fell within the definition that this Supreme Court has recognized of a consent decree. The change in the legal relationship was specifically court-ordered in this case. There was judicial approval because the MSPB specifically accepted that settlement agreement for enforcement purposes. They could have rejected it. Even though they're not competent to enforce it when the government breaches it. They are competent to enforce it. They are competent to give Mr. Cunningham the specific remedies that he bargained for, which in this case, when he entered that consent decree, he certainly chose to bargain for those equitable remedies that the MSPB could offer. He had counsel. He presumably knew what remedies were available. He chose to enter it into the board record for enforcement. And he made that conscious choice. That was a conscious bargain. We're merely trying to hold Mr. Cunningham to that bargain. He's now trying to go back on that. It's important to remember that there are two parties to that bargain. On page 13, the government says, the issuing court has inherent authority to enforce a consent decree through contempt sanctions. Other than thinking that perhaps the government's action was contemptible, what exactly could the government have done with contempt for, say, a further violation of the consent of the settlement agreement? In this case, the government, the cat was out of the bag, but there are other instances, and this court has heard several appeals where contempt, the government can, the MSPB can order the government to comply. So wait, wait, what I hear you saying is nothing. Is that your answer? Nothing? The contempt power would do nothing in this case? I'm not, I can't speak to say what the MSPB would attempt to do within that contempt power. That issue is not before the court, and I just, and I do not know what the MSPB... Well, it is before the court. Again, you raised it. The MSPB does have an inherent authority to, I mean, they can certainly order OPM to comply in this instance, but this instance is over, and that is an unfortunate situation, but, you know, Mr. Cunningham agreed to this bargain when he entered, and both parties agreed to this bargain. It's important to remember that this settlement agreement was entered by two parties, Mr. Cunningham and the government. We've talked a lot about Mr. Cunningham, but the government bargained for this agreement. They specifically... And they breached it. Agreed, but people breach contracts all the time, but they're enforced, you can limit your remedies, and what the government, the agency bargained, they gave Mr. Cunningham $50,000 to pretty much end this removal action, and they agreed for enforcement to keep it at the MSPB. And let him go forward with his life, and then they stopped it. And that is, to the extent that the breach, to the extent that OPM breached the agreement, they made a mistake, and we acknowledge that. The MSPB found that, but that doesn't change the nature of the bargain that the parties agreed to. As Your Honors recognize, Mr. Cunningham is seeking prospective indefinite future relief based on his non-federal salary. This is certainly, was never contemplated by the parties at the time of the agreement. This Court has recognized that they have to look to the intent of the party at the time they reached the agreement. This certainly was never contemplated by the government. Can I ask you, can I ask you two different points, two different points. Just going back to the restatement, is it your view, on race judicata, we're not, we're away from the initial, the threshold jurisdictional issue. Is it your view that we should construe the language of the restatement to be exclusively limited to the example there, which deals with federal state law question? Or isn't it fair to construe the restatement to be applicable to a situation such as ours? The restatement should be construed to, you may split your claim when you are seeking two distinct forms of relief, two sets of relief, relief for two different forms, two different wrongs. When you are seeking a wrong under a federal statute, a wrong under a state statute, or in the Eighth Circuit case that Plano put a lot of stake in, when you're seeking relief under the National Labor Relations Act and the Labor Management Relations Act. When you are seeking two distinct forms of relief that one court is not competent to grant, you certainly can split your claim, but here Mr. Cunningham is seeking one relief, relief for one breach of one settlement agreement. And he already obtained that relief from the MSPP. We have had several discussions about whether or not this court feels that relief was sufficient, but whether or not that relief was sufficient doesn't alter the question that that was the relief that Congress provided. That was the relief that he elected, that was the relief the parties entered a bargain for, and that was the relief that he received. Can I just ask you a kind of outside question just for my own clarification, not dealing directly with the facts of this case, but in the settlement agreement, and this is what Judge Wallach and I had raised earlier, that there was this caveat that said subject to rules, law, regulation, court order or subpoena or something like that. In other words, there would be circumstances in which they would accept to the extent disclosure may be required by law, regulation, subpoena or court order. I'm just wondering what would happen in cases of security clearances, et cetera, where typically one would think that if you go to a government agency and you ask them a question, it's incumbent upon them to disclose all of the information they have. Is that what's contemplated by that? Are there certain regulations that you're aware of that would say notwithstanding anything else, you've got to give up this information, everything in the file? You may not know. I'm just interested in how the whole scheme works. We would have to look more closely into that issue and would be happy to do so at the court's request. So I cannot speak at present moment to the interplay between the security clearance regulations and that whole Egan question and how it would interplay with the settlement agreement, Your Honor. You don't know of an example, for instance, of a regulation or a law that might come into play? Not at present. I appreciate that. Your Honor. Here's another question. Let's assume for the moment that Cunningham's claim in front of the MSPB is still pending. It's pending right now. Would 28 U.S.C. Section 1500 block the complaint filed in the Court of Federal Claims at least until the MSPB proceeding was completed? Presumably it would, Your Honor, but the MSPB... Did you say yes? Presumably it would, Your Honor, yes. It would be, at first, it didn't have been filed elsewhere, so it would be... Right. As I understand it, Section 1500 said something about when a claim is filed in a court, you know, basically the same, where the same claim or related claim or something like that, then you can't file another claim in the Court of Federal Claims related to that one until the first claim in court is completed. Yes, Your Honor. So then, for purposes of this kind of situation, we would be treating the MSPB like a court. The MSPB was acting in its judicial capacity, Your Honor, so I would presume it should be treated like a court in this context. So then you couldn't have parallel litigations. Assuming there's jurisdiction, you couldn't have parallel litigations going on, one, an enforcement proceeding in the MSPB, and then a breach of contract claim in the Court of Federal Claims at the same time. You'd have to wait for the MSPB one to be finished, and this one, in this particular instance, it is finished. Well, it's res judicata. You can't have, because what you're allowing is impermissible claims. No, but I'm just talking right now about parallel. You can't go in parallel. That's what you're telling me. That's your understanding of 28 U.S.C. 1500. Yes, Your Honor. But 28 U.S.C. 1500, it doesn't bar that second claim from being filed after the first claim is completed. Do you see what I'm saying? I do follow, Your Honor, but it's not the 1500 that bars this claim. It's jurisdiction, and then it's res judicata, because certainly you can't, even if 1500 didn't bar the same suit, res judicata would. It's res judicata. He already received, Mr. Cunningham already received a final judgment on the merits from the MSPB, and he was awarded relief. Mr. Cunningham chose not to take it. Do you understand the inner tension in what you're telling me? That, number one, section 1500 would not permit Mr. Cunningham from filing a co-pending concurrent court of federal claims action as soon as the MSPB proceeding is triggered, but then after the MSPB decision is finished, then he would be blocked from subsequently filing court of federal claims complaint because it would be barred by res judicata. As Your Honor has noted earlier, if Mr. Cunningham wanted to press this jurisdictional issue, he could have chosen to go to the court of federal claims first. He chose not to. He chose to avail himself of relief at the MSPB. Right, but if we think that the court of federal claims does have jurisdiction, which is exactly what the court of federal claims held in light of Holmes and Van de Sands, then that's taken away from you. That means he's basically entitled to file in both places on the same day if he wanted to, if 1500 blocks him, at least he has to hold an abeyance to the court of federal claims action. We would say that he would hold an abeyance if it fell within 1500. But then 1500, after the first action is done, he's permitted to then file in the court of federal claims and he's not barred by res judicata. 1500 doesn't govern res judicata. Res judicata is a separate question than 1500. 1500 is whether or not he's permitted to file. Res judicata is a separate issue, Your Honor. The issue of res judicata is... Right, but you're familiar with Tohono, right? I am familiar with Tohono. So Tohono, the Supreme Court said, after the district court action is completed, then the nation can bring the action in the court of federal claims, assuming there isn't a statute of limitations problem. Right? The nation wouldn't be barred by res judicata. Tohono doesn't address 1500. It doesn't address res judicata. Tohono is... Right, but there's no suggestion in there at all that res judicata would block the nation's action in the court of federal claims. But that's a distinct case. In this case... In this case, Mr. Cunningham already received complete relief. Tohono is distinct, Your Honor. I mean, it's a totally different situation than here. I mean, Mr. Cunningham ultimately received a remedy  the specific remedy that he bargained for, Your Honor, and he received that remedy. And Tohono is a distinct case, Your Honor. Do you think the government, assuming things were not to resolve themselves the way in which the government... Do you think the government could just avoid this by in every settlement agreement putting in language that says the MSPB will be the exclusive forum for any adjudication of any issue that matters with regard to breach of this case? Do you think that that would be appropriate, proper, legal, smart? I think it would certainly be... It certainly could be considered as a smart idea, and it certainly... I mean, this court recognized that parties can consent to specific remedies. They recognize in Holmes that you can consent away your right to damage it. And certainly we... But you agree that there's nothing in terms of the actual agreement by the parties here, the language of the agreement here, that goes in that direction? We say that that's within the... It's based on the PSRA scheme, and it's based on the apparent bargain that that party struck from the moment that Mr. Cunningham entered federal service until the moment that they entered, that he entered that agreement. You say in 36 that implicit in this agreement is an agreement to accept the remedies the court could offer specific performance or rescission, but you don't cite any legal authority for that proposition. Do you have any? It's known in the legal authority of what the board's remedies are at that time, and it's the regulatory scheme, it's the statutory scheme. That is what the board's remedies are. Mr. Cunningham presumably was advised by his counsel what remedies the board was available to grant, and just like Mr. Holmes chose to do it in the first instance, if Mr. Cunningham didn't think they were sufficient... Everything you're saying follows from that one-word sentence that you started with, which was the word no. Yes, Your Honor. It's inherent in the regulatory scheme. The breach of contract inquiry, that was fully litigated in front of the MSPB, right? Yes, Your Honor. Okay, so assuming we find jurisdiction, assuming we find there's no bar under res judicata to this claim in the court of federal claims, then would there be issue preclusion on the whole finding and question of breach of contract? According to Mr. Cunningham, he's argued that there is, that OPM would be precluded, and I think that that evidences the fact that there is, that it is res judicata, and the MSPB was competent to adjudicate this claim. Okay, so you'd say yes. I'm saying assume for the moment, in this hypothetical world, we find jurisdiction, we find there's no res judicata bar to the court of federal claims claim, would there be issue preclusion against the government on MSPB's finding that there was a breach of the settlement agreement? At present, Your Honor, I believe there would. I mean, certainly that issue was not fully briefed and fully dealt with. At present, I believe there would. I cannot say for 100% certain that there could not be an alternative argument to be made, but there has not, at present, I personally, I do not see one, but that, you know, that would involve significant legal analysis to determine if there was an issue to be made, which was premature at the time that this case was briefed, but I presume that issue conclusion in general would apply from the MSPB to the court of federal claims, assuming that jurisdiction were proper in this instance. Would there have been, I mean, I raised initially, the only rub that I could see is whether or not it's really a final decision. I mean, the government, it was adverse to the government, and the government really had an opportunity to appeal it because he withdrew it or did whatever it is he did. So I didn't know if that threw a wrinkle in whether or not there might be an issue of conclusion. It quite potentially could, Your Honor, and I would, that issue, though, is not presently ripe at the moment, so it quite potentially could, and potentially an argument could be made at the present that's just not ripe, and it would not be for the court. The issue here is that this court, the court of federal claims lacked jurisdiction. In the government's position, the court of federal claims lacked jurisdiction to entertain claims to breach of an MSPB consent decree based on the nature of the civil service or format. And alternatively, even if we are wrong on that jurisdictional ruling, Your Honor, the court of federal claims properly held that this case was barred by res judicata. Mr. Cunningham specifically chose... What's your best authority for that? What's your best case for that? It comes out of several things, Your Honor. It comes out of, I mean, I guess, Phillips May is the closest because it says that you presume a single contract, all claims should be litigated together, but it's inherent in the nature of res judicata, Your Honor. I mean, as courts have recognized, that you define res judicata based on the facts. You decide it based on the transactional facts, not by the relief thought. In these cases, they are the same claims. The questions presented in the enforcement action were the same as the questions presented here, whether the settlement was violated, is Mr. Cunningham entitled to a remedy, and the standard for the violation was specifically the same standard that would be applied, that the MSCB applied contract law. And the Court of Federal Claims works, so the legal standard is the same, the factual questions were the same, and the MSCB was confident and did award all the relief that was contemplated by the agreement. And as the scheme sets forth... Well, let me ask you this then. At page 13 of your brief, you cite Judge Posner in Cook v. Chicago. From the standpoint of interpretation a consent decree is a contract, but from the standpoint of remedy, it is an equitable decree. Now, you've already said specific performance doesn't do any good. What equitable relief could be obtained in this case? Rescission and reinstatement, and that's what Congress... That's the scheme that Congress created. The extent that there's a problem with that scheme, that's an issue for Congress. This is the scheme. This Court enforces that scheme, and that was the relief that this scheme contemplated and gave Mr. Cunningham, and that was the relief he chose. If there's a dissatisfaction issue, that is the nature of the scheme. That is the nature of the MSPB's powers. They're just specific performance. MSPB is given specific performance and is given the right to rescind and reinstate. That's what the law says. Could the MSPB say, put Mr. Cunningham back at OPM and just give him his back pay? If he relitigated his personal action, he certainly could obtain that and obtain his back pay, and that's the bargain that he struck. He agreed that the remedy would be to rescind and reinstate, and had he done that, he would get what was contemplated, what both parties contemplated at the time they entered that agreement. The government contemplated that if it breached, he could rescind his personnel action, he could reinstate it. If he prevailed, he could get reinstated into his old position and receive all that back pay. They did not contemplate future damages based on his private salary, private benefits. Additionally, the different claim for any time there was a salary change, this was so far out of the realm that it had ever been contemplated by the parties at the time that they chose to enter this. When interpreting a consent decree, you must look to the intent of the party. So would that be the measure of damages if we send this to the Court of Federal Claims, could that be the measure of damages? That's what Mr. Cottingham, I presume that that issue, what specific damages are at issue, has not gotten that far, but based on the statements of counsel, I presume that that's what Mr. Cottingham is contending that the measure of damages should be, and we would certainly believe that that's not a proper measure of damages, but that's an issue. No, he's a private sector, that's what he told us. We would contend that that's not proper, that's what he was seeking, but that would be an issue for the trial court to decide if this court were to send it back. We do not believe that that's within the scope of this agreement, or even at all proper to award Mr. Cottingham his full private sector pay, but that would be an issue to be decided and briefed fully at the trial court. I think we have your position. Thank you for your indulgence. Thank you, Your Honor. Thank you. Mr. Bowen, we ran way over with the government. We'll give you five minutes if you need it. That's plenty, Your Honor. We just have a few quick points that we would like to make on rebuttal. The government had referenced the Fausto case in previously discussing the comprehensive scheme with the CSRA, and I just wanted to note that the government did concede in their brief in footnote four that Fausto was not controlling it. And again, that's consistent with our argument that yes, the CSRA is a comprehensive and integrated scheme for the civil service laws, but that does not cover contracts with the government and claims for money damages arising out of those contracts. That's what Congress established jurisdiction. Of course, there are claims in the Tucker Act for any money. But this is different than Title VII, right? So this would be a step beyond where this court has gone? Yes, although I wouldn't necessarily call it beyond. It would be an addition, too. I mean, the statutes are similar. The analysis of Holmes is the same. The government mentioned Phillips May, again, on the issue of res judicata. That case, res judicata applied because the party had brought their suit at the Armed Services Board of Contract Appeals, and then I think they litigated nine claims under the 10 contract, and then tried to litigate a 10th claim with the court of federal claims. Res judicata applied because that crucial factor of competency of jurisdiction existed. There was an overlap between the court of claims and the Board of Contract Appeals, where both courts, and the court and the board, had authority to render judgment on a contract. The MSPB cannot, under any circumstances, render a judgment on a contract claim. They can issue decisions of compliance on an order or a decision at the board. And with respect to the consent decree or administrative decree issue, again, as we've argued, we believe that this case fits squarely within Vandisand and the critical holding there where to allow the MSPB to say that the MSPB has exclusive jurisdiction over this agreement simply because the board adopted the terms into the record for enforcement purposes would improperly allow the board to unilaterally... What do you say, though, just briefly, to your friend's argument that this is different than the Title VII scheme because every district court... I mean, the CSRA is really a special thing because not only did they create unique remedies, but they created institutions to deal with those areas of relief. That's different, is it not? That's much more of a comprehensive, specific, detailed scheme than Title VII, which just relies on the EEOC plus our regular judicial system, right? So isn't that a fair distinction to be drawn? It's a distinction, although I don't think it's material. I mean, maybe the CSRA is more complex and they've created a larger scheme, but the statute does not incorporate Tucker Act claims, just like the Title VII doesn't, neither does the CSRA. It doesn't incorporate and carve out, limit the court's inherent jurisdiction on the Tucker Act for breach of contract damages. And recognizing that time is short here, I just... Again, our position is race judicata is an equitable doctrine and, again, in Vanderstand, the court recognizes it should be applied and the approach should be flexible with respect to jurisdiction. And in this case, Mr. Cunningham has really not had his day in court and the remedy was really no remedy at all. It was not a contract remedy at the MSPB and, therefore, we respectfully request that the circuit reverses the court on race judicata and affirm on jurisdiction. Thank you. We thank both parties. The case is submitted.